Good morning, Your Honors. Janet Lawson on behalf of the debtors and the appellants. So, at its essence, this case is about harmonizing 28 U.S.C. 1961 with the Bankruptcy Code Section 506-B. And I think the whole issue resolves around the word and in 506-B, which reads, that there shall be allowed on the holder of such claim, comma, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or state statute. I think that and, in the middle there, divides the sentence. And I'm not going to pretend to be an expert on the English language and diagramming sentences, but that and separates the interest from the rest of the sentence, which requires the application of state law. And that interpretation is harmonious with 28 U.S.C. 1961, which provides for interest at the federal rate. Counsel, before we get to the merits of the question of which interest rate applies, could you address the question of whether your clients have standing? Because under the theory that either way, the sale, the terms of the sale order, means that they get $40,000 no matter what we think the interest rate on the claim was. I don't think that that's actually accurate. I think that the trustee got the $40,000 via the sale, and that was an action in the bankruptcy court, a motion, which is separate and distinct from claim objection. My clients brought an adversary to object to the claim. That was an adversary proceeding versus the sale motion. They're separate. But how, I mean, if you were to succeed in objecting to the amount of the claim, how does that result in your clients getting anything more than what they have? Was it 726? I have it here. 726, subsection 6, sixth to the debtor. So they would get the refund if we prevail in the claim objection. It goes to them. But the sale, I mean, that would be true, I think, if the sale had been for some certain. But the sale price, as I understand the order, was for payment of all liens on the property plus $40,000. So if you're right, it means that the amount of the lien is maybe lower than we thought, and then the buyer should get some money back. But it wouldn't mean that you got money back. It would because the job of the bankruptcy court and the trustee is to get the highest and best price for the property. But, Counsel, I'm looking at the sale order, and the sale order says that after everything is paid, there's a net return to the estate of the sum of $40,000. So how could that say it? And the bankruptcy court has interpreted his own, I think it was a he this time, his own order as saying that what this meant was that after everything is paid, the only thing that comes back to the estate is $40,000. So given the bankruptcy court's interpretation of his own order, even if you're right that it's point something percent, not 10 percent, how does anything come to you even if we were to agree with that? Because the sale did in fact net $40,000 to the estate. I agree with that. But the math is such that the claim was the wrong amount. So my clients objected to the claim. And based on the claim objection, the adversary proceeding, they're entitled to the reduction based on 28 U.S.C. 1961. Isn't your real objection that the sale order should have been worded differently? I mean, this is a sort of unusual procedure that the price is not a dollar amount. The price is payment of liens plus $40,000 not to the estate. But isn't your objection that that was invalid somehow and it should have been for a dollar amount? And then you would have been able to litigate the claim. Well, I think that the – I see what you're saying is that the order is based on the math. But I think it's important here to note that this was an overbid by $10,000, that the motion for the sale never indicated that it would determine the amount of the claim, which was stated as estimated in the motion. There was never a judicial determination as to what the lien was. And I think that that's a due process problem. Oh, I would like to reserve my remaining minutes if possible.  Thank you. Ken Hennessey of Allen-Mackens, on behalf of 2425 West 5th Street, CRE, LLC. May it please the Court. I think the discussion we've just heard gets to the crux of what this really is, and it really is an attack on a final non-appealable sale order. You know, the standing issue also supports that. The question of standing is not a question of standing. It was the basis for the district court's affirmance of the bankruptcy court's ruling. Bankruptcy court went a little bit further and said that the adversary proceeding was a collateral attack that was improper against the sale order, and also that the substance of the matter did not favor the debtor, that 28 U.S.C. 1961 applies only to the allowance and payment of unsecured claims. Did the spires receive adequate notice that the amount of the claim would be conclusively determined due to the sale order process? Yes, the sale motion itself. It was served on them, but it was an estimate of the value of the claim. Did they get notice that the actual value of the claim would be determined in this proceeding? They got notice that the actual amount of the lien would be paid upon closing of the sale. That was in the notice, that was in the motion, that was in the sale agreement, that was included with the trustee's moving papers. This is a pretty unusual procedure, right? It is. And so what would very clearly tell the spires that you're going to get nothing more than $30,000 or $40,000 even if the interest rate was .5 percent, not 10 percent, even if the claim is a couple hundred thousand dollars less than they say it is, and so normally this money would dribble down back to you at the bottom of the pyramid, but here we're structuring this so whether it's half a percent or 10 percent, you're getting nothing but $30,000 or $40,000. What made that clear to them? And, by the way, you'll never be able to challenge that. Well, let me start with the $30,000 or $40,000 wasn't to go to the debtor. It was to go to the bankruptcy estate. Right, right. And there's nothing in the record that shows that any of that amount of funds would drip down to the debtors through the 726A process. But what was clear in the record and what the debtors had actual notice of, they actually filed an adversary proceeding while the sale motion was pending and then dismissed that adversary proceeding. That adversary proceeding was on the same basis that we overstated our claim as the lien creditor. So there's no question they had notice of what was going on here. They took some action and then didn't follow through on it. But to answer the court's question more directly, the claim had been on file for several months. There was no dispute as to what the lien creditor was asserting as its right to interest. The sale agreement estimated the total amount of the lien based on the continued accrual of interest. At 10 percent. At 10 percent. And the reason that was done that way as an estimate rather than this is the figure is because at the time of filing the sale motion, there was no idea when the sale would close. So you don't know the number that's actually going to be paid at the closing of the sale through escrow. I mean, but it strikes me that in a normal kind of proceeding, somebody would expect that, wow, if this claim ends up really being overstated by a couple hundred thousand dollars, it's the estate that's going to benefit from this, not the person who has putatively overstated their claim by a couple hundred thousand dollars or the buyer. Right. Well, I'm glad Your Honor clarified that because it's not the creditor that would get that windfall. If it's a windfall, it would go to the buyer. And the reason it was structured this way, this goes back a little bit in the history of the bankruptcy case. This is the second Chapter 11 case filed by the debtors. The first one was dismissed. This one was converted after several months. The trustee actually filed a no-asset report demonstrating her intent not to proceed with administration of the case, simply because she couldn't determine that there was enough value in this particular property to justify further administration. And she didn't want to pursue it because there was some interest in her efforts to market the property, but not enough above the amount of the liens to justify proceeding. So the way the sale was structured was to guarantee the estate at least a minimum recovery and then to take that to the market and see what more you could get. Although originally it was a related party that was going to be the buyer, right, with the stocking horse bid, unless there was some true third party, which it turned out that there was. That's correct, Your Honor. It was the creditor, my client, that made the opening bid as sort of a credit bid plus cash to the estate. And that was for the purpose of jump-starting this process, where the trustee was uncertain that a marketing process would actually yield results. So even if, in that circumstance, if some third party hadn't come in, if the interest rate really was 0.5 percent, that would have been a windfall to the related party? If that's the case, yeah. That would have been a result where the creditor retained greater interest than it was entitled to. Right. And my question is, going down the due process rabbit hole, if, in fact, there was a due process violation in terms of the notice, because it would have been the third party who paid more, then if the interest rate were lower, wouldn't that person be the one who suffered the loss, and therefore there would be no prejudice, which is the second prong of the due process claim? That's correct, Your Honor. I mean, there's the first prong of the due process allegation, that they didn't have adequate notice of what was actually happening. I think the record is absolutely clear that that's not the case. Some of us seem to have doubts about that based on the documents that we're looking at. So I'm just asking, what's your argument if the notice was inadequate? That the notice was adequate? If we were to conclude, if we were to go to the due process, reach the due process argument, there's an argument that we shouldn't. But if we were, would that claim survive on the prejudice prong? No, Your Honor, not based on Judge Carroll's factual findings in the bankruptcy court as to the effect of his sale order. And I think those findings, which are that even in the event that there was a reduced interest rate based on the application of the rate applicable to unsecured claims to an oversecured claim, then that wouldn't benefit the debtors at all. That would redound to the benefit of the buyer. Could the buyer, I mean, just assuming for a moment that they're right about what the interest rate should be, could the buyer come in now and say, hey, I paid too much? When would the buyer have had to assert that? The buyer actually was party to the agreement that stated the amount or the estimated amount of the secured claim to be paid through closing of escrow. And as a party to that agreement who had awareness of what the claim was that was filed with the bankruptcy case, that party would not have a right to come back after the order became final and say, I didn't like my due diligence. I now change my mind. I don't want to pay that interest rate because I think another interest rate should have been applied. As a party to the actual agreement and as a party subject to the sale order, they would have no basis to attack it. Did the sale order actually say what the interest rate was? Or, I mean, it had the dollar amount of the estimated claim, which was predicated on a particular interest rate. But did it say, here's the interest rate we're using to calculate this? I don't believe it had the interest rate in the order itself. But, again, the claim that was the basis for the distribution upon sale, which is the only way this sale actually got accomplished, is through Bankruptcy Code Section 363F3, which provides that a trustee can sell free and clear of liens to the extent that the proceeds of sale are sufficient to pay those liens upon closing of the sale. So unless there was some determination before the closing of the sale or some objection to the sale order that prevented the closing, the actual closing of the sale determined the amount of the claim by Operation of Section 363F3 paying that claim at the close of escrow. I think with that, down to 30 seconds, so I'll submit. Thank you, Your Honor. Thank you, Counsel. Ms. Lawson, you have a few minutes left. Thank you, Your Honors. So I really want to hit hard on the due process issue. It was never anything in the record that indicated that this estimated amount would conclusively determine the amount of the claim. And the buyer certainly can't come back and complain that he paid too much because the whole point of a sale in a bankruptcy is to get the highest and best price. Counsel, I'm looking at page 88, the sale motion, and it says what the purchase price is, and it's the sum of the amount required to pay in full, blah, blah, blah, and then down to item D, $30,000 net to the seller. So in looking at that, it seems to make pretty clear that there are these indeterminate amounts that will be determined by the closing of the sale, and then what you'll get, what the estate will get, is $30,000 or, as it turned out, $40,000. So how did that fail to give you notice that it was effectively determining the amount of the claim? Because a claim proceeding has to be done by adversary. And this was a motion. So a motion and an adversary are separate. Well, I mean, that would have been a basis for you to object, but I don't see how it – I mean, it is still the case that that's what it says it's doing. I mean, that's a reason it shouldn't have done that. Yeah, but it says estimated. It doesn't say conclusively, this is the amount. It says estimated. Counsel, you agree that if you're wrong on the interest rate, that regardless of whether you had appropriate notice or not, nothing's coming to your client, right? I agree with that. It does really fall back to harmonizing 28 U.S.C. 1961 with 506B and that little word and that precedes the items to which state law applies. So although counsel says 1961 only applies to unsecured claims, that is not true. It does not say that. It says any recovery. It doesn't say secured, unsecured. It does happen that the Cartolucci case did involve an unsecured claim. And a distinction in the briefs is that counsel cited a number of Chapter 11 cases that have to do with default interest, and that's a whole different ballgame. That has nothing to do with this case. And with that, unless there are further questions, I'll submit. Yeah, thank you very much, counsel. Spire v. 25 West 53 is submitted, and we will take up U.S. v. NACA.
judges: Wardlaw, Bennett, Miller